UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
NADIA HUMA,

                         Plaintiff,

               - against -

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                     Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5709 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Nadia Huma, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1383(c)(3) on October 7, 2021.[1]  (Compl., Dkt. 1.)  Plaintiff challenges the Social Security Administration's ("SSA") determination of her claim, which granted Plaintiff Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), but denied Plaintiff Disability Insurance Benefits ("DIB") "without prejudice."  (Compl., Dkt. 1., at ECF[2] 9; Administrative Transcript ("Tr.")[3] 13.)  On March 28, 2022, the Acting Commissioner of Social Security ("Commissioner") moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Dkt. 13.)  The Commissioner specifically asserted that this Court lacks subject matter jurisdiction to hear the case.  (Dkt. 13-1, at ECF 2.)  For the reasons explained below, the

---

[1] 42 U.S.C. § 1383(c)(3) renders final determinations of claims for Supplemental Security Income subject to the same judicial review provisions as 42 U.S.C. § 405(g).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] All references to "Tr." refer to the consecutively paginated Administrative Transcript (*see* Dkt. 9), and not to the internal pagination of the constituent documents.

Court denies the Commissioner's motion.  This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

Plaintiff was born in 1982 (Tr. 476) and has suffered from severe schizophrenia since the early 2000s (Compl., Dkt. 1, at ECF 9).  Plaintiff suffers from hallucinations and hears voices that threaten to harm her.  (Tr. 17.)  Plaintiff has been hospitalized several times because of her condition, including in 2002, 2008, 2016, and 2017.  (*Id.*)

Because of Plaintiff's mental health condition, her father, Abdul Malik, applied for Social Security benefits on her behalf.   (*See* Tr. 476 ("I, Nadia Huma . . . here[by] state that because of my mental health condition, I am unable to proce[ss] my SDI[4] Appeal case Proceedings. There[fore] I authorize my Father Mr. Abdul Malik . . . on my behalf.").)  Plaintiff's father has submitted several Social Security applications on Plaintiff's behalf beginning in 2002, including two Disability Insurance Benefits ("DIB") applications and, most recently, an SSI application. (Compl., Dkt. 1, at ECF 9.)

### I.    Plaintiff's Previous DIB Applications

Plaintiff filed two DIB applications, one on August 15, 2002, and another on February 12, 2015.  (Tr.  2; Compl., Dkt. 1, at ECF 9.)  Both DIB applications were "denied at the initial level because [Plaintiff] did not meet the insured status requirements."  (Tr. 2.)  Plaintiff appears not to have timely appealed either of these DIB denials within the regulatory deadline.  (Dkt. 13-1, at ECF 6 ("There is no indication of record that Plaintiff ever requested reconsideration of these initial [DIB] denials[.]").)  Plaintiff's father explains that the first application was not timely appealed because he underwent triple bypass surgery in the summer of 2002 rendering him unable

---

[4] Plaintiff's reference to "SDI" is another term for "DIB."

to work.  (Compl., Dkt. 1, at ECF 9.)  As a result, Plaintiff's family suffered extreme financial hardship, which—coupled with Plaintiff's father's heart condition—meant that Plaintiff was unable to devote resources to appealing the DIB denial.  (*See id.* ("For few days, we could manage only one time meal in 24 hours.  In this critical circumstances[,] land lord for the apartment building . . . gave us the eviction Notice[.]").)

## II.   Plaintiff's Current SSI Application

On August 29, 2018, Plaintiff filed an application for SSI benefits.[5]  (Tr. 2.)  Plaintiff alleged a disability onset date of January 1, 2001.  (Tr. 486.)  The SSA denied Plaintiff's SSI application and Plaintiff timely appealed on February 20, 2019.  (Tr. 517, 523.)  Plaintiff retained attorney Michael S. Aranoff to represent her at the appeal hearing before Administrative Law Judge Seth Grossman.  (Tr. 477, 543.)

### A.   The ALJ Assesses Plaintiff for Both SSI Benefits and DIB at March 12, 2020 Hearing

At the March 12, 2020 hearing, the ALJ found Plaintiff's schizophrenia constituted a "severe impairment" and that she had been disabled since August 29, 2018, the filing date of her SSI application.  (Tr. 16, 18.)  Yet, Plaintiff's actual alleged disability onset date was January 1, 2001—and the oral hearing transcript shows that the ALJ's inquiry focused almost exclusively on whether Plaintiff's disability began in 2001.[6]  (*See* Tr. 486 ("ATTY:[]The alleged onset date is

---

[5] The Court notes that although Plaintiff checked only the box for SSI benefits in her initial application, subsequent records in the adjudication of the application reference both DIB and SSI benefits.  (*See, e.g.*, Tr. 543–44 (stating that Plaintiff's attorney Michael S. Aranoff will represent Plaintiff in her "claim for Social Security Disability insurance benefits and Supplemental Security Income" in Fee Agreement for appeal); Tr. 477 (listing Plaintiff's Administrative Law Judge hearing "Claim Type" as "Disability" rather than "Supplemental Security Income").)

[6] Whether Plaintiff was disabled as of 2001 was irrelevant to her 2018 SSI application.  (*See* Tr. 2 (explaining that SSI benefits cannot be paid before the SSI application date).)  Thus, the Court concludes that the ALJ focused on Plaintiff's 2001 evidence because he was assessing her eligibility for DIB as well.  Furthermore, Plaintiff's Complaint states that the ALJ requested further

January 1, 2001. ALJ: 2001? That's before her 22nd birthday? . . . [D]o we have anything that goes back to 2001, Counselor?").) The ALJ stressed the importance of seeing evidence showing Plaintiff's disability prior to her 22nd birthday—presumably for her to qualify for DIB *in addition* to SSI benefits. (*See* Tr. 486–87 (explaining that Plaintiff's medical records prior to her 22nd birthday "obviously" bore a "big burden" in the ALJ's analysis of her benefit eligibility).)

For reasons that are not clear from the record, Plaintiff's attorney had not assembled Plaintiff's documents from 2001 in time for the ALJ hearing. In fact, Plaintiff's attorney acknowledged at the hearing that "[t]here's a lot more records I need to get, frankly." (Tr. 494.) As a result, the consultative medical examiner did not assess Plaintiff's condition as of 2001. (Tr. 487 ("ALJ:[]Doctor, was there—in your review of the record, did you find anything that goes back to 2001? . . . [Medical Examiner]: No.").)

### B.     The ALJ Recommends that Plaintiff Amend Her Disability Onset Date

Because of the lack of supporting records, the ALJ suggested to Plaintiff's attorney that he "[a]mend the onset date to the [2018 application] filing date, and then [file] a separate application" with the original 2001 onset date. (Tr. 500.) The ALJ then explained that if Plaintiff's attorney followed his recommendation, the ALJ would specify in his final ruling that it was "without prejudice to filing a claim . . . back to the alleged [2001] onset date." (Tr. 501.) Specifically, the ALJ promised, "I will write that . . . this [determination] is without prejudice to filing another claim . . . should [Plaintiff] be able to uncover records that go back to th[e] date [Plaintiff turned 22]. . . . I would think a [federal] judge would honor that." (Tr. 504.) Moreover, the ALJ appeared to expect a federal court to remand the case back specifically to him—so that he could analyze

---

documents regarding her DIB eligibility during the March 12, 2020, hearing. (*See* Compl., Dkt. 1, at ECF 10 (Plaintiff's father explaining that the ALJ requested they "provide him further documents [regarding Plaintiff's] [DIB] benefits").)

Plaintiff's DIB claim once the necessary additional evidence was gathered.  (Tr. 502–03 ("ALJ:[]I want the St. Joseph records.  We'll have another shot at it with the same or different expert . . . I would ask for [the same expert]. . . .You'll have the updated records."); *see also* Tr. 504 ("I will write that the counselor amended the onset date to the filing date and that there were no records that go back [to the original onset date] . . . this is without prejudice . . . should counsel . . . uncover records that go back to that date.  And that—I mean, will that be honored?  I would think it would be honored . . . at the district level, I would think a judge would honor that.").)

### C.   Plaintiff Amends Disability Onset Date and ALJ Renders "Fully Favorable" Decision

On March 26, 2020, Plaintiff received her notice of a "fully favorable" decision from the ALJ regarding her SSI application.  (Tr. 13.)  However, this decision was granted pursuant to Plaintiff's amended disability onset date, August 29, 2018.  (Tr. 16.)  In his decision, the ALJ specifically notes that "[e]ven though the claimant amended her onset date, the medical record showed a lengthy history of mental health disorder dating back to 2002[.]"  (Tr. 17.)  Importantly, the ALJ cautions future reviewers that his "decision is without prejudice should [Plaintiff] file an additional claim alleging [s]he was disabled before h[er] 22nd birthday."  (Tr. 18.)

## III.   Procedural Background

Plaintiff timely appealed the ALJ's decision to the SSA's Appeals Council, asserting that she had "bec[o]me disabled prior to August 29, 2018" and thus should have received benefits from an earlier date.  (Tr.  6.)  In her appeal, she submitted additional records showing evidence of her disability since 2001, including Coney Island Hospital records dating back to 2000 (Tr. 86, 96) and St. Joseph's records (Tr. 41) that the ALJ had requested at the March 2020 hearing, (Tr. 502–03).  The Appeals Council evaluated Plaintiff's additional evidence only with respect to her SSI benefits and found that the records "d[id] not relate to the period at issue[,]" and "d[id] not affect

the decision about whether [Plaintiff] w[as] disabled beginning August 29, 2018." (Tr. 2.)  The

Appeals Council accordingly denied Plaintiff's request for review.  (Tr. 1.)  Further, the Appeals

Council found that to the extent Plaintiff was contesting her previous DIB denials, she remains

ineligible because "there is no evidence that [Plaintiff] ever met the insured status requirements."[7]

(Tr. 2.)  On October 7, Plaintiff timely filed this civil action requesting review of the ALJ's March,

26, 2020 decision.[8]  (Compl., Dkt. 1.)

---

[7] In order to qualify for DIB, an individual must "[h]ave worked jobs covered by Social Security." *Disability Benefits | How You Qualify*, SOCIAL SECURITY, https://www.ssa.gov/benefits/disability/qualify.html (last updated 2022).  However, an adult disabled prior to the age of 22 can also be eligible for DIB as a Disabled Adult Child ("DAC") if a parent qualifies for insured status. *See id*. ("Example: A worker starts collecting Social Security retirement benefits at age 62.  He has an unmarried 38-year old son who has had cerebral palsy since birth.  The son may start collecting a DAC benefit on his father's Social Security record."). Plaintiff explains that she has been disabled since the "age of 17 ½ years" old and thus has never worked and "could not earn[] insured security status." (Compl., Dkt. 1, at ECF 3.)  And Plaintiff's father is a "76[-]year old retired government employee" who qualifies for Social Security.  (Tr. 699; Compl., Dkt. 1, at ECF 11 (explaining that Plaintiff's father "was full[y] meeting [his] insured status" as early as 2002).)  Thus, it is unclear why the Appeals Council—or previous SSA reviewers—apparently did not consider Plaintiff's eligibility for DIB as a DAC.

[8] According to 42 U.S.C. § 405(g):

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The SSA's final decision was issued on August 17, 2021 (Tr. 6), and the Complaint was filed on October 7, 2021 (Compl., Dkt. 1), 51 days after the presumed receipt of the decision, rendering this appeal timely.

6

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FRCP 12(c). The legal standards applicable to a FRCP 12(c) motion are the same as those applied to a 12(b)(6) motion to dismiss. *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a FRCP 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In evaluating a FRCP 12(b)(6) motion, the Court must accept all well-pleaded factual allegations of the complaint as true, and draw all reasonable inferences in favor of the non-moving party (here, Plaintiff). *Id.* at 679. Furthermore, where a plaintiff proceeds *pro se*, the Court must construe the pleadings liberally and interpret them to raise the strongest arguments they suggest. *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

Unsuccessful claimants for benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. §§ 405(g) and 1383(c)(3). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to

examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

The Commissioner argues that this Court does not have jurisdiction to hear this case. The Court first addresses this threshold issue and finds that it does have jurisdiction. Next, the Court liberally construes Plaintiff's *pro se* Complaint as an appeal of the ALJ's denial of her renewed DIB application. (*See* Compl., Dkt. 1, at ECF 9 ("DECISION OF THE [SSI] APPEAL IS BASED ON THE FOLLOWING FACTS, 1. [Plaintiff] filed prior [DIB] applications on Aug.[ ]15, 2002 and Feb. 12,[]2015, for disability and both applications were denied[;] 2. [W]hy [I did] not provide the medical supporting documents at the time of first hearing that was held on March 12, 2020[;] 3. That [Plaintiff] never worked to meet the Insured Status requirements.").) The Court finds that the ALJ failed to develop the record regarding Plaintiff's disability from the original alleged onset date of January 1, 2001. Thus, the Court remands the case to the SSA for the ALJ to develop the record. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale."). Specifically, the ALJ should assess whether Plaintiff qualifies for DIB as a DAC.

**I.      This Court Has Jurisdiction to Review the ALJ's Determination**

The Commissioner asserts that Plaintiff may not challenge, under Section 405(g), agency determinations in her favor.  (*See* Dkt. 13-1, at ECF 5 (citing *Heller v. Comm'r of Soc. Sec.*, 328 F. App'x 74, 74 (2d Cir. 2009) (summary order)).  The Commissioner argues that "the ALJ's decision was as favorable to Plaintiff as possible because she filed an SSI application" and thus "there is no injury to be redressed, and Plaintiff has no standing to appeal to the District Court." (*Id.*)  The Court does not agree with this assessment.  Plaintiff's Complaint alleges that her disability began prior to the date of her SSI application.  (Compl., Dkt. 1, at ECF 9.)  Further, Plaintiff is challenging the ALJ's decision to deny her DIB claim—not her SSI claim.  (*Id.* (explaining that the ALJ's decision was "[a] fav[o]rable action for [Plaintiff's] Supplemental Security Income only. And [Plaintiff's] SDI case was declined because of insufficient medical documents.").)  Thus, the Court finds that the Commissioner's decision was not fully favorable because Plaintiff alleges that she was denied DIB with a disability onset date of January 1, 2001. *See Stora v. Comm'r of Soc. Sec.*, No. 16-CV-6503 (RRM), 2018 WL 4637351, at *1 (E.D.N.Y. Sept. 27, 2018) (interpreting the Commissioner's "fully favorable" decision as "not fully favorable" because the plaintiff "writes that his disability began [before his alleged onset date].")).  For the same reason, the Court also finds that Plaintiff has asserted a redressable injury as she claims her DIB case "was declined because of insufficient medical documents." (Compl., Dkt. 1, at ECF 9.)  In sum, the Court has jurisdiction to hear Plaintiff's claim.

**II.     The Commissioner Constructively Reopened Plaintiff's Previous DIB Applications**

The Commissioner also argues that Plaintiff missed the 60-day deadline for requesting review of her previous DIB applications.  (Dkt. 13-1, at ECF 6 (citing 20 C.F.R. §§ 404.905, 404.909).)  Thus, the Commissioner asserts, Plaintiff's DIB denials in 2002 and 2015 are now final and binding.  (*Id.*)  However, the SSA can constructively reopen a final determination. *Byam v.*

*Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("If the Commissioner 'reviews the entire record and

renders a decision on the merits, the earlier decision will be deemed to have been reopened, and

any claim of administrative res judicata to have been waived.'") (citing *Malave v. Sullivan*, 777 F.

Supp. 247, 251–52 (S.D.N.Y. 1991)).

Here, the Court finds that the Appeals Council constructively reopened Plaintiff's previous

DIB application by reviewing the administrative record and determining anew that Plaintiff does

not qualify for DIB.  (Tr. 2.)  In their denial of Plaintiff's request to review the ALJ's decision, the

Appeals Council made a renewed determination that "[b]ecause there is no evidence that [Plaintiff]

ever met the insured status requirements, [Plaintiff] would not qualify for a Period of

Disability/Disability Insurance Benefits." (*Id.*)  The Appeals Council based their decision on SSA

"records [that] show [Plaintiff] ha[s] never been insured for Title II purposes" and cited to

Plaintiff's testimony during the March 12, 2020 hearing that she had "never worked." (*Id.*)

Moreover, the Court finds that the ALJ also attempted to assess Plaintiff's DIB claim on

the merits, but was unable to come to a conclusion because of the inadequately developed record.[9]

The ALJ's hearing focused almost solely on whether Plaintiff was disabled before the age of 22.

(*See* Tr. 486 ("ATTY:[]The alleged onset date is January 1, 2001.  ALJ: 2001?  That's before her

22nd birthday? . . . [D]o we have anything that goes back to 2001, Counselor?").)  But the ALJ's

inquiry into Plaintiff's disability before her 22nd birthday would be inexplicable if he was only

adjudicating her SSI claim.  As the Commissioner states herself, evidence of Plaintiff's disability

in 2001 is irrelevant to her SSI application.  (*See* Tr. 2 (finding records prior to August 29, 2018

do "not relate to the period at issue.").)  Rather, evidence of Plaintiff's disability prior to age 22

---

[9] The ALJ also appeared to expressly find good cause to reopen Plaintiff's DIB application.
(*See* Tr. 505 (explaining that if the case were remanded back to the ALJ for consideration of the
DIB application, the ALJ "would just find, okay, there's good cause . . . and go on.").)

was relevant only to Plaintiff's DIB claim. *See Disability Benefits | How You Qualify*, *infra* ("An adult who has a disability that began before age 22 may be eligible for [DIB] benefits[.]").

In sum, the Court concludes that the Commissioner constructively reopened Plaintiff's prior DIB applications by reassessing the merits of Plaintiff's alleged disability before age 22 at multiple levels of review. The Court therefore proceeds to determine whether the ALJ's decision to deny Plaintiff's DIB claim "without prejudice" was supported by substantial evidence.

## III.   The ALJ Failed to Adequately Develop the Administrative Record for Plaintiff's DIB Claim

### A.   ALJ's Duty to Develop the Record

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Furthermore, even though Plaintiff did not expressly raise the issue, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

B.     **The ALJ Failed to Develop and Consider Plaintiff's Medical Record Before Age 22**

The ALJ failed to develop the record by failing to consider and include records regarding Plaintiff's disability before age 22, as of the original alleged onset date.  "[W]hile an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records[,] . . . [he] must nevertheless take 'independent steps to complete the record' if necessary.  Thus, courts in our Circuit have frequently found that an ALJ does not satisfy [his] duty to develop the record by relying on the claimant's attorney to obtain the missing records." *Dillon v. Comm'r of Soc. Sec.*, No. 17-CV-4136 (PAE) (BCM), 2018 U.S. Dist. LEXIS 154897, at *49–50 (S.D.N.Y. Sept. 7, 2018) (citing *Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016)); *see also Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record.").

Here, Plaintiff originally alleged a disability onset date of January 1, 2001.  (Tr. 486.)  Importantly, this would have been three years before Plaintiff turned 22.  During the hearing, records supporting the existence of Plaintiff's disability in the early 2000s were missing, and Plaintiff's attorney conceded there were a "lot more records [he] need[ed] to get, frankly."  (Tr. 494.)  Rather than taking independent steps to develop the record for these earlier years, the ALJ suggested to Plaintiff's attorney that he "[a]mend the onset date to the [2018 application] filing date" and file another claim when the attorney obtained the relevant records.  (Tr. 500.)  While perhaps well-intentioned, this approach was contrary to the ALJ's duty to develop the record on Plaintiff's DIB claim dating back to 2001—and created procedural complications for Plaintiff that resulted in the Appeals Council affirming her DIB denial, a decision which can only be unraveled at this stage of the proceedings.  Thus, the Court finds that remand is necessary so that the ALJ

12

can develop the medical record going back to Plaintiff's original disability onset date.  Specifically, the Court directs the ALJ to develop the record regarding Plaintiff's disability prior to the age of 22 and her qualifications as a DAC.

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's motion for judgment on the pleadings.  The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 20, 2022
        Brooklyn, New York

13